## SUPREME COURT.

JAMES F. PENNIMAN agt. THE NEW-YORK BALANCE CO.

JOHN BRIDGE and others, Trustees, &c., agt. SAME.

An *injunction* will be granted to prevent and restrain a *nuisance ;* and it will be allowed at the instance of any private individual, who sustains a special injury from it.

Where the defendants permanently located their floating dry dock in the basin opposite to the upland in the street, and opposite to the side of the pier of the plaintiffs, by which the plaintiffs were deprived of wharfage and gains from the pier, arising from large vessels, for active shipping lying in the basin, *held,* that the plaintiffs' rights were peculiar to them, the loss of which, by the defendants' obstruction, constituted an injury special to them.

The court, in such a case, may *abate* the nuisance, and *enjoin* the defendants from *continuing* it.

*New-York Special Term, May,* 1856.
MOTION for an injunction.

CHARLES O'CONOR, *for motion.*
HIRAM KETCHUM, *opposed.*

MITCHELL, Justice. The plaintiff in the first suit is the owner of two-thirds of pier No. 36, lying between Market and Catharine streets, on the East river. The plaintiffs in the second suit are owners of the right to wharfage of vessels lying opposite their upland, which is situate on South-street, between the same streets, and is 130 feet wide, and has erected on it large buildings, which derive great gains from the vessels usually lying opposite to them.

The defendants have moored a large floating dry dock for the repair of vessels, 120 feet wide and 300 feet long, in the basin opposite the premises of Bridge and others, and within about twenty feet of Penniman's pier, and extending nearly its whole length, and have also driven in piles with a view to the permanent occupation of the basin for their purposes. The plaintiffs show that large ships had been accustomed to come to this basin and lade and unlade from it, and still needed such accommodation, and that the plaintiffs made large gains from that use of the basin; but that such vessels cannot now come there, and thus those gains are lost to them.

It is not shown that any one, having lawful authority so to do, has given the defendants permission to place their dry dock in this basin; and it is not shown that any officer has power to do so. It is the business of certain officers to assign berths to ships, and to direct when they should remove from them. But no officer has the power to allow even a ship to lie permanently in any place needed for the accommodation of vessels in active employment.

This basin is one of the most valuable in the city, and, from its great depth, one of those most needed for vessels of large size. It is as much an interruption of the navigable use of the waters of the East river to place a vessel in a basin of this

kind permanently, as it is to place it in the stream of the river. It would be a public nuisance to leave the vessel unnecessarily in the stream; but would be disregarded if the stream were so wide that no delay or injury was caused to other vessels—as it is a nuisance to leave wagons to remain in our public streets, but is disregarded if no inconvenience results from it.

In this case the larger vessels are excluded from the basin by this permanent obstruction. Ships might remain in the basin long enough to unload and load, and take in passengers, but they cannot remain in places needed for active shipping, when the delay is not for the purpose of making ready to sail again. It is said no other place so convenient can be found for the stationing of the dry dock as this, and that it is needed for many large ships. There certainly are other places on both sides of the river, further from the thickly settled parts of the city, where deep water can be obtained, and which ships do not yet wish to occupy, the owners of which would gladly have them occupied as dry docks—as they occupy the upland for shipyards. There this dry dock could find room enough without injuring the rights of any, and near enough to ships to derive ready employment from them.

It is a familiar rule that an injunction will be granted to prevent and restrain a nuisance, and it will be allowed at the instance of any private individual, who sustains a special injury from it. The plaintiffs' right to the wharfage, and to the gains from the pier, and the gains which they made from vessels lying in the basin, were rights peculiar to them, the loss of which constitutes an injury special to them.

A public nuisance may be abated by any one. A court of equity, to prevent a resort in such case to force, and to encourage peaceable remedies, interposes where a plaintiff also sustains a peculiar injury, and by its authority *abates* the nuisance—enjoining the defendants from continuing it. That remedy is proper in this case; and the injunction prayed for must be granted, and continued to the end of the suit.

Ten dollars costs are allowed to the plaintiffs in each action.